# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL AND DEBORAH JAVINSKY-WENZEK, | Civil No. 11-2228 (JRT/JSM) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION** |
| CITY OF ST. LOUIS PARK and ST. LOUIS PARK POLICE DEPARTMENT, | |
| Defendants. | |

Jennifer R. Coates and Daniel R. Shulman, **GRAY PLANT MOOTY, MOOTY & BENNETT, PA**, 80 South 8th Street, Suite 500, Minneapolis, MN 55402, for plaintiffs.

Paul D. Reuvers and Jason J. Kuboushek, **IVERSON REUVERS, LLC**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendants.

Plaintiffs Michael and Deborah Javinsky-Wenzek ("the Javinsky-Wenzeks") bring this action claiming violations of their substantive and procedural due process rights and 42 U.S.C. §§ 1981 and 1983. The Javinsky-Wenzeks are landlords in the City of St. Louis Park ("the City"). On January 21, 2011, the City sent Michael Javinsky-Wenzek a letter ordering that he and his wife terminate a tenants' lease pursuant to the City's Crime Free/Drug Free Ordinance. The Javinsky-Wenzeks seek a preliminary and permanent injunction against the City to prevent it from enforcing this Ordinance. In the view of the Court, the Javinsky-Wenzeks have demonstrated a likelihood of success on the merits in their action against the City. However, because the Javinsky-Wenzeks have

failed to show irreparable injury arising from the City's conduct, the Court denies their request for a preliminary injunction.

## BACKGROUND

## I.   FACTUAL BACKGROUND

The Javinsky-Wenzeks own rental property in the City and rented it to Marquita Robinson and George Howard Grant ("the Grants") for over three years.   (Aff. of Michael Javinsky-Wenzek, ¶¶ 2, 5, June 2, 2011, Docket No. 5.)   The Javinsky-Wenzeks possessed a lease with the Grants for the period from July 1, 2010 through June 30, 2012, for monthly payments of $1,250.   (*Id.*, Ex. B.)   The Grants' adult son, Joemel Robinson, was not on the lease and allegedly did not reside at the property.   (Javinsky-Wenzek Aff. ¶ 14.)

On January 13, 2011, Joemel Robinson purportedly stole a number of items from a drug dealer, including drugs.   (Compl. ¶¶ 11-13, Aug. 5, 2011, Docket No. 1.)   The City obtained a warrant to search the Grants' residence for evidence related to this incident. (Javinsky-Wenzek Aff. ¶ 13.)   On January 17, 2011, the City's Police Department executed this warrant.   (*Id.* ¶ 13.)   During the search, the police found a baggie containing a small amount of suspicious material.   (Compl. ¶ 17-18.)   According to the police officer at the scene, "[i]t was readily apparent to me by the look and presence of seeds and stems that the green leafy substance was marijuana."   (Aff. of Raymond Laudenbach ¶ 3, Sept. 8, 2011, Docket No. 13.)   As a result, the police decided that the Grants were in violation of the City's "Crime Free/Drug Free and Disorderly Use Lease Requirements."

(Compl. ¶¶ 17-18.)  The police did not conduct formal testing of the substance until January 27, 2011, when testing confirmed that it was marijuana.  (Javinsky-Wenzek Aff., Ex. D.)

On January 21, 2011, the City's Police Department sent Michael Javinsky-Wenzek a letter ordering that he and his wife terminate their lease with the Grants, pursuant to the City's Crime Free/Drug Free Ordinance ("the Ordinance").  (Javinsky-Wenzek Aff., Ex. C.)  The Ordinance requires that landlords terminate the leases of their tenants upon notification from the City's Police Department of certain criminal or drug-related behavior.  *See* St. Louis Park, Minn., Ordinance § 8-331 (2009).

The City's letter to the Javinsky-Wenzeks stated, "Your tenant(s) is/are responsible for the violation [of the Ordinance].  At this time, your responsibility is to move to immediately terminate the lease of all tenants at [the property]."  (Javinsky-Wenzek Aff., Ex. C.)  The letter stated that the City would require the Javinsky-Wenzeks to pay an administrative license violation fee of $750 for each calendar month that they failed to terminate the Grants' tenancy after receiving the notification.  (*Id.*)  It further noted that any outstanding fees must be paid prior to the renewal of their rental license. (*Id.*)  The City enclosed a document called a "Resolution Plan" that had blank fields to be filled in by the Javinsky-Wenzeks.  (Javinsky-Wenzek Aff. ¶ 23.)

The Javinsky-Wenzeks submitted the Resolution Plan to the City's Police Department, filling in a proposal that they would not evict their tenants.  (*Id.* ¶ 32.)  The Javinsky-Wenzeks also spoke with the City's Police Department and wrote a City Councilwoman requesting her assistance.  (*Id.*, Ex. F.)

The Javinsky-Wenzeks received a letter from the City's attorney in response to their inquiries.  (Javinsky-Wenzek Aff., Ex. I, Feb. 3, 2011.)  The letter stated,

> When a violation comes to the attention of the City, the Police Department is obligated to notify the owner and property manager of the violation.  The owner is then **required** to enforce the crime free provision in the lease and terminate the tenancy.  (City Code § 8-331(c)).  If the owner does not proceed to terminate the lease, there is a $750.00 per month administrative fee which must be paid before the annual license will be renewed.  (City Code § 8-332)
>
> . . . .
>
> You **must** proceed with the eviction in good faith . . . .
>
> . . . .
>
> As to an appeal, if you do not proceed to terminate the lease either by a voluntary agreement or by an eviction proceeding, as stated above, the $750.00 monthly administrative violation fee will commence on March 1. . . .  Since this fee will need to be paid in order to renew your license for 2012, you may appeal the imposition of the fee at that time to the City Manager pursuant to City Code § 8-36.  The notice will explain the appeal procedure.
>
> . . . .
>
> . . . Sometimes [the Ordinance] may appear to be a blunt instrument when applied to a particular case.  However, the City in its initial adoption of the ordinance and in its administration by City personnel **has not made exceptions**, which hopefully has and will continue to have the effect of maintaining quality rental housing . . . .

(*Id.* (emphases added).)  The attorney's letter also noted that it did not matter who owned the marijuana found at the Grants' home.  (*Id.*)

The Grants decided that they did not want to risk obtaining an eviction on their records and instead wanted to move.[1]   (Javinsky-Wenzek Aff. ¶ 36.)   The Javinsky-Wenzeks agreed to release the Grants from their lease obligation, and submitted a Resolution Plan to the City indicating that there was a mutual agreement to terminate the tenancy.  (*Id.*, Ex. J.)  The Grants vacated the unit on March 15, 2011.  (Javinsky-Wenzek Aff. ¶ 37.)

The Javinsky-Wenzeks claim that they have been unable to re-rent the premises since the Grants moved.  (*Id.* ¶¶ 39-42.)   They also allege that they have spent several thousand dollars preparing the property for re-rental and many hours cleaning and showing the apartment to potential applicants.  (*Id.* ¶ 41.)

## II.    CRIME FREE/DRUG FREE ORDINANCE

The Ordinance states:

(1) Crime Free/Drug Free.

1.  Resident, any members of the resident's household or a guest or other person affiliated with resident shall not engage in criminal activity, including drug-related criminal activity, on or near the premises.

2.  Resident, any member of the resident's household or a guest or other person affiliated with resident shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near the premises.

3.  Resident or members of the household will not permit the dwelling unit to be used for, or to facilitate criminal activity, including drug-related

---

[1] An eviction is an action filed in Housing Court by a landlord against a tenant.  Minn. Stat. § 504B.285.  It can be difficult for tenants to obtain housing if an eviction has been filed against them.

criminal activity, regardless of whether the individual engaging in such activity is a member of the household, or a guest.

4. Resident, any member of the resident's household or a guest, or other person affiliated with the resident shall not engage in the unlawful manufacturing, selling, using, storing, keeping, or giving of a controlled substance at any locations, whether on or near the premises or otherwise.

5. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL AND IRREPARABLE VIOLATION OF THE LEASE AND GOOD CAUSE FOR IMMEDIATE TERMINATION OF TENANCY.

St. Louis Park, Minn., Ordinance § 8-331 (2011).  The Ordinance further states:

(c) Upon determination by the Police Department that a licensed premises or unit within a licensed premise was used in violation of the Crime Free/Drug Free provision of Subsection (a)(1) herein, the Police Department shall cause notice to be made to the owner and property manager of the violation. The owner or property manager **shall notify the tenant or tenants within ten days of the notice of violation of the Crime Free/Drug Free lease language and proceed with termination of the tenancy of all tenants occupying the unit.** The owner shall not enter into a new lease for a unit located in the licensed property with an evicted tenant for a period of one year after the eviction.

*Id.* § 8-331 (emphasis added).  If the landlord does not comply with Subsection (c), the landlord is subject to a monthly fine and revocation of the license:

An owner failing to proceed with an action to terminate the tenancy after Police Department notification in accordance with a Crime Free/Drug Free violation . . . shall pay an administrative license violation fee of $750 for each calendar month that the owner fails to proceed.  Any outstanding fees must be paid prior to the city renewing a rental license for the licensed premises.

*Id.* § 8-332.  *See also id.* § 8-36(1) (stating that the city may revoke a license at any time for failure to comply with "this Code or other applicable federal, state or local laws or regulations.").

According to the City, the purpose of this Ordinance "is to provide safer rental housing within the City by providing a mechanism for removing criminal and disruptive tenants." (Def. Memo. of Law in Opp. to Pl.'s Mot. for Preliminary Injunctive Relief, at 2, Sept. 8, 2011, Docket No. 11.) Prior to the Ordinance, the City claims that "landlords were unwilling, unequipped or too scared to evict unruly tenants." (Aff. of Brian Hoffman ¶ 4, Sept. 8, 2011, Docket No. 14.)

## III. APPEALS

The Javinsky-Wenzeks claim that there was no means of appealing the City's decision that they must evict the Grants. The City admits that the Javinsky-Wenzeks were not given a full explanation of appeal procedures. (Def. Memo. of Law in Opp. to Pl.'s Mot. for Preliminary Injunctive Relief, at 17, Sept. 8, 2011, Docket No. 11.)[2] The City argues, however, that there were two ways that the Javinsky-Wenzeks could have appealed the City's directive that they terminate the Grants' lease.

First, the City claims that the Javinsky-Wenzeks could have appealed the $750 a month administrative penalty imposed for failure to evict tenants under the Ordinance. St. Louis Park, Minn., Ordinance § 1-14(e) states,

> Any person who is required by the city to pay an administrative penalty may make a written appeal of the penalty to the city manager, or designee, within seven days of notice by the city of the penalty. The city manager, or designee, will have the authority to reduce the fine or determine whether the appellant is to be charged with a penalty.

---

[2] The record indicates that the Javinsky-Wenzeks were informed of some kind of appeals process, although it is unclear what the appeals would have entailed and if the appeals would have considered the lease termination decision. (*See* Javinsky-Wenzek Aff., Ex. F, Ex. G, Ex. I.)

An affidavit by Brian Hoffman, the Director of Inspections for the City, describes the process for appealing a fine as follows:

> If a property owner does not want to comply with Code 8-331, the Police Department will hand the case over to the Inspections department to commence enforcement action. When notified of a non-compliant property owner, our initial action is to send a final notice stating that a fee will be imposed by a certain date unless compliance is made and explain an appeal may be made to the City Manager. The City Manager's decision can then be appealed to the City Council.
>
> . . . .
>
> Under Section 1-14 of the City Code, a person is allowed to appeal an administrative penalty to the City Manager or designee. The City Manager or designee has the authority to reduce the penalty or to determine whether the appellant will be charged with a penalty.

(Hoffman Aff. ¶¶ 5, 8.)

Second, the City argues that the Javinsky-Wenzeks could have appealed a revocation of their rental license, or a denial of the renewal of their license, if the City had taken this step. The City may suspend or revoke a license "at any time, for any reasonable cause, including failure . . . to comply with the provisions of this Code." St. Louis Park, Minn., Ordinance § 8-36(1). The Ordinance states:

> Any applicant, within ten days of notice of denial, suspension or revocation of a license, may request in writing an administrative hearing before the city manager. The city manager shall promptly issue a written decision in the matter. The city manager's decision may be appealed to the city council by filing a written appeal to the city clerk within ten days of receiving written notice of the city manager's decision.
>
> The city council may appoint a committee of the city council or an independent hearing officer to hear the matter, report findings of fact and a recommendation of disposition to the city council. Hearings on the appeal shall be open to the public and the licensee or applicant shall have the right

to appear and be represented by legal counsel and to offer evidence in such person's behalf.  At the conclusion of the hearing, the city council shall make a final decision.

*Id.* § 8-36(2-3).  If a license is reinstated, the applicant shall "pay a reinstatement fee in addition to the current license fee."  *Id.* § 8-36(4).  "As a further condition of reinstatement, the licensee shall reimburse the city for all law enforcement costs, legal fees, investigations, inspections or other professional fees incurred due to the licensee's violation of applicable laws, ordinances, regulations, and conditions of the license."  *Id.* An important issue in this case is whether the City's appeal process would have allowed the Javinsky-Wenzeks to challenge the City's mandate that they terminate the Grants' lease.

## ANALYSIS

## I.      ARTICLE III

Before determining whether the Javinsky-Wenzeks are entitled to a preliminary injunction, the Court must first determine whether it has jurisdiction to hear this action. Pursuant to Article III of the United States Constitution, federal courts may only adjudicate actual "cases" and "controversies."  *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994).  Standing and ripeness are two doctrines that inform and define this "case or controversy" requirement.  The Javinsky-Wenzeks bear the burden of establishing standing and ripeness.  *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  The Court finds that the Javinsky-Wenzeks have alleged facts sufficient to establish jurisdiction.

A.      **Standing**

To establish Article III standing, a plaintiff must fulfill three elements.  First, the plaintiff must allege an injury in fact that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Second, the alleged injury must be traceable to the defendant's challenged action.  *Id.*  Third, it must be "likely" rather than "speculative" that a favorable decision will redress the injury.  *Id.*

The Javinsky-Wenzeks have alleged facts sufficient to meet all three elements.  First, the Javinsky-Wenzeks' injury is traceable to the City's actions because the City allegedly demanded that they evict the Grants.  Second, it is likely that a favorable result would redress the injury because the Javinsky-Wenzeks have requested money damages and injunctive relief to remedy the injuries they suffered.  Finally, the Javinsky-Wenzeks' alleged injury was actual and concrete, not conjectural or hypothetical.  The City suggests that the Javinsky-Wenzeks did not suffer an injury because they could have refused to terminate the Grants' lease, and could instead have appealed the receipt of fines or a license revocation.  However, the Javinsky-Wenzeks are not objecting to the imposition of fines or a license revocation.  They object instead to the City's mandate that they

terminate the Grants' lease, which they claim led to the loss of their rental income and the expenditure of additional funds. These allegations suggest an actual and concrete injury.[3]

### B.      Ripeness

The ripeness doctrine prevents courts from entangling themselves in abstract disagreements. *Neb. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000). A ripeness inquiry looks to the "fitness of the issues for judicial determination" and the "hardship to the parties of withholding court consideration." *Id.* at 1038. The "fitness for judicial determination" inquiry goes to the Court's ability to visit an issue, while the "hardship" inquiry considers damages and the notion that heightened uncertainty may result from delayed resolution. *Id.*

This action does not appear to involve an abstract disagreement, but rather a concrete directive from the City. Governmental action is "'ripe' for review at once" where there "is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately." *See Lujan*, 497 U.S. 871 at 891. The Javinsky-Wenzeks claims are fit for judicial determination because they allege that the City directed them to immediately terminate the Grants' lease. Furthermore, the Javinsky-Wenzeks were likely to suffer undue hardship if required to wait for appeals of fines or a license revocation. *See* Part(II)(B)(1)(b), *infra*. The Court finds that the Javinsky-Wenzeks have alleged sufficient facts to demonstrate the ripeness of this action.

---

[3] Furthermore, the appeals that the City alleges it provided were probably insufficient to avoid an injury. *See* Part(II)(B)(1)(b), *infra*.

Accordingly, the Court will analyze the merits of their request for a preliminary injunction.

## II.    PRELIMINARY INJUNCTION

In assessing a request for a preliminary injunction, the Court must consider (1) the probability that the movant will succeed at trial, (2) the threat of irreparable injury to the movant, (3) the harm to other interested parties if the injunction is granted, and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 112-13 (8th Cir. 1981). The "absence of a finding of irreparable injury is sufficient grounds for vacating a preliminary injunction." *Modern Comp. Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir. 1989) (citing *Dataphase Sys., Inc.*, 640 F.2d at 114), *superseded by statute on other grounds*. Although all other factors weigh in favor of granting the preliminary injunction, the Court denies the Javinsky-Wenzeks' request for a preliminary injunction because of the lack of an irreparable injury.

### A.    Irreparable Injury

Because the absence of an irreparable injury is sufficient grounds for denying a preliminary injunction, the Court will first analyze this factor. The only injury demonstrated by the Javinsky-Wenzeks, if an injunction is not granted, is the continued enforcement of the Ordinance. Based on the evidence presented, the Court finds that this injury is not irreparable and will not have any practical effects on the Javinsky-Wenzeks.

This preliminary injunction motion was filed over four months after the Grants moved,[4] and there is no evidence that the Grants want to move back into the rental property.  At oral argument, the Javinsky-Wenzeks indicated that the Grants had signed a lease with another landlord.  Consequently, there is no evidence that the Ordinance is at all likely to be enforced against the Javinsky-Wenzeks again.   A theoretical ongoing injury without a practical impact is insufficient to meet the irreparable injury standard.  *See, e.g.*, *Pinckney v. Bd. of Educ. of Westbury*, 920 F. Supp. 393, 400 (E.D.N.Y. 1996) (refusing to grant a preliminary injunction because an alleged constitutional violation did not cause an irreparable injury and "is, at its core, a single plaintiff's claim for money damages").  The Javinsky-Wenzeks may well demonstrate that they are entitled to money damages in this case.  Their injury is not irreparable.

The Court denies the Javinsky-Wenzeks' request for a preliminary injunction because it lacks the element of irreparable harm.  Other factors relevant to a preliminary injunction weigh in favor of the Javinsky-Wenzeks, however, and the Court will discuss these factors below.

## B.      Probability of Success

The next factor considered in a preliminary injunction inquiry is the probability that the plaintiff will succeed on the merits of its action.  The Javinsky-Wenzeks have filed suit claiming violations of 42 U.S.C. § 1983 and procedural and substantive due

---

[4] The Grants moved out in March 15, 2011 and their lease terminated on April 1, 2011, but the request for preliminary injunction was not filed until August 5, 2011.

process based on the deprivation of property. "The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). The parties do not dispute that the City acted under the color of state law in enforcing the Ordinance. The parties instead dispute whether the Javinsky-Wenzeks are likely to prove that the City engaged in procedural and substantive due process violations. The Court finds that the Javinsky-Wenzeks are likely to prove that the City violated their procedural due process rights, but not their substantive due process rights. The Court will discuss these claims in turn.

### 1. Procedural Due Process

To determine if the City provided procedural due process to the Javinsky-Wenzeks, the Court must consider three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation through the process used; and (3) the Government's interest, including the burdens that additional safeguards would entail. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334. "[M]inimum procedural requirements are a matter of federal law[;] they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985) (internal quotation marks omitted).

The Javinsky-Wenzeks are likely to prove that the City violated their procedural due process rights because (1) the private interest in a lease to one's home is significant, (2) there appears to be a high risk of erroneous deprivation because of the lack of notice and an adequate hearing before the deprivation of property, and (3) the Government's interest does not appear strong because the burden imposed by a hearing is not significant and because tenants who violate the Ordinance may continue residing in the City.

### a.    Private Interest

### (1)    Property Interest

First, the Court must consider the Javinsky-Wenzeks' private interest. *See Mathews v. Eldridge*, 424 U.S. at 334-35. The Javinsky-Wenzeks must establish that the City's actions implicated a property interest in order to succeed in their procedural due process claim. The Eighth Circuit has defined property interests as follows:

> [P]roperty interests are created and their dimensions are defined not by the Constitution but by an independent source such as state law . . . State law can create a property interest in a number of different ways. [First, s]tate law can explicitly create a property right . . . [Second, a] state may also create a constitutionally protected interest by establishing statutory or regulatory measures that impose substantive limitations on the exercise of official discretion. Finally, a state may create a protected property interest by understandings between the state and the other party.

*Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718-19 (8th Cir. 1995) (internal quotation marks and citations omitted).

The Javinsky-Wenzeks allege that they were deprived of rental income from the Grants and of the money and time they spent preparing the apartment for other renters. The Javinsky-Wenzeks will likely prove that these are property interests under state law

because of their contract with the Grants and their right to rent property pursuant to a rental license with the City. *See Bituminous Materials, Inc. v. Rice Cnty.*, 126 F.3d 1068, 1070 (8th Cir. 1997) (holding that a property right in a license exists where there are "substantial limits on the government's exercise of its licensing discretion"); *see also* St. Louis Park, Minn., Ordinance § 8-334(b) (defining specific reasons why the City may revoke, suspend, or decline to renew a rental license).[5]

### (2)   Importance of Interest

Because the Javinsky-Wenzeks have established a property interest, the Court must weigh the importance of that interest to determine what process is due. The Supreme Court has held that an owner's "right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993). Among "valuable rights of ownership" in a property are "the right to unrestricted use and enjoyment, and the right to **receive rents**." *Id.* at 54 (emphasis added). *See also Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) ("[T]emporary or partial impairments to property rights . . . are sufficient to merit due process protection."). The loss of rent due is not "insignificant or unworthy of due process protection. The rent represents a significant portion of the exploitable economic value of [the owner's] home. It cannot be classified as *de minimis* for the purposes of procedural due process." *James Daniel Good*

---

[5] Other interests may also have been implicated by the City's actions, such as the Javinsky-Wenzeks' reputation. *See* Part(II)(B)(1)(b)(3), *infra*.

*Real Prop.*, 510 U.S. at 54-55.  The importance of the Javinsky-Wenzeks' right to rent their property weighs in favor of providing significant process.

### b.      Risk of Erroneous Deprivation

The second step in determining what process is due is analyzing the risk of erroneous deprivation.  *See Mathews*, 424 U.S. at 334-35.  The risk of erroneous deprivation appears to be high in this case for three reasons.[6]  First, it appears unlikely that there would have been a hearing, at any point in the process, on the specific issue of whether the Javinsky-Wenzeks were required to terminate the Grants' lease.  Second, if there was a right to such a hearing, the Grants appear to have received insufficient notice that such right existed.  Third, the hearings that the City alleges were available were likely too late in the process to make the Javinsky-Wenzeks whole.

### (1)     Requirement of a Hearing

First, the Javinsky-Wenzeks appear likely to establish that the City provided no hearing, at any time, to challenge the determination that the Javinsky-Wenzeks must terminate the Grants' lease.  The Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest."  *Id.* at 333.  If there was no appeal, then the Javinsky-Wenzeks were deprived of property without a hearing, contrary to the requirements of the due process clause.  *See Logan v.*

---

[6] For these same reasons, the Court finds that a deprivation of property likely occurred, and that this case did not involve landlords who voluntarily gave up their right to rent to their tenants.

*Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (holding that procedural due process was denied by an "'established state procedure' that destroy[ed] [plaintiff's] entitlement without according him proper procedural safeguards").

The City argues that the Javinsky-Wenzeks could have appealed its mandate that they evict the Grants when challenging fines or the termination of their rental license. *See* St. Louis Park, Minn., Ordinance § 1-14(e); 8-36(a), (2-3). However, the scope of the appeals provided at these later stages is undefined.

The evidence submitted by the Javinsky-Wenzeks suggests that the appeals offered would not have revisited the City's decision that the Javinsky-Wenzeks must terminate the Grants' lease. When the Javinsky-Wenzeks requested an appeal, the City's attorney informed the Grants that the City had granted **no exceptions** to the Ordinance or its administration since its enactment in 2009. (*See* Compl., Ex. D.) This statement is consistent with section 8-332 of the Ordinance, which makes it a violation of the Ordinance on its face for landlords to refuse to comply with the police's demand that they evict a tenant. Thus, it is highly questionable whether the City would have revisited the police's determination that the Javinsky-Wenzeks must evict the Grants.

### (2)    Notice

Even if the City would have provided a hearing to the Javinsky-Wenzeks regarding the lease termination decision, the City likely did not give adequate notice that such a hearing was available. "Adequate notice is integral to the due process right to a fair hearing, for the 'right to be heard has little reality or worth unless one is informed.'"

*Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

In the City's letter notifying the Javinsky-Wenzeks of the alleged Ordinance violation, the City instructed the Javinsky-Wenzeks to terminate the Grants' lease "immediately" and did not offer a hearing of any kind.   (*See* Javinsky-Wenzek Aff., Ex. C.)   The only information the Javinsky-Wenzeks received about appeals appears to be the result of their own inquiries, and this information was probably insufficient.   For example, the City attorney told the Javinsky-Wenzeks that the City would "explain the appeal procedure" for the "imposition of the fee" at the time of their license renewal, but did not provide specific information about an appeal of the lease termination decision. (*See* Javinsky-Wenzek Aff., Ex. I.)   The Court finds that the Javinsky-Wenzeks will likely prove that the availability of an appeal was not readily apparent from the initial termination letter, the Ordinance, or their subsequent communications with the City.

### (3)     Pre-Deprivation Hearing

The Javinsky-Wenzeks are also likely to show that any hearings provided by the City would have been inadequate because they would have been "no recompense for losses caused by erroneous [deprivation]." *James Daniel Good Real Prop.*, 510 U.S. at 56.   The Supreme Court has "described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing **before** he is deprived of any significant property interest."   *Loudermill*, 470 U.S. at 542 (emphasis in original) (internal quotation marks omitted).

The appeals that the City claims were available to the Javinsky-Wenzeks would have taken place **after** the Javinsky-Wenzeks had already been deprived of a significant property interest – their right to continue renting to the Grants. (*See* Javinsky-Wenzek Aff., Ex. C ("At this time, your responsibility is to move to **immediately** terminate the lease of all tenants.") (emphasis added).)  Even if their right to rent to the Grants was regained after an appeal, a post-deprivation hearing would likely "never make [the Javinsky-Wenzeks] entirely whole." *See Logan*, 455 U.S. at 437.

The Javinsky-Wenzeks' business was likely to suffer if they had waited for a hearing after the imposition of penalties.[7]  A prolonged process, especially one involving fines and a termination of their rental license, ran the risk of permanently labeling the Javinsky-Wenzeks in the community as landlords for criminals and drug users. *See Paul v. Davis*, 424 U.S. 693, 709 (1976) (noting that an injury to reputation in connection with loss or damage to the property interests may entitle a person to notice and an opportunity to be heard) (internal citation omitted).  Tenants like the Grants are likely to move if an appeal is not resolved quickly and if there remains an imminent threat of eviction. Furthermore, if the City had revoked the Javinsky-Wenzeks' license, the Ordinance would have required them to "pay a reinstatement fee in addition to the current license fee" and reimburse the city for costs.  St. Louis Park, Minn., Ordinance § 8-36(4).  The

---

[7] Landlords like the Javinsky-Wenzeks may also take a business risk by filing an eviction action or terminating a tenant's lease.  These actions can be costly in terms of money and time, and can expose landlords to further litigation if based on insufficient facts.  *See Columbia Basin Apartment Ass'n*, 268 F.3d at 797-98 (holding that landlords' due process rights may have been violated if they were threatened with a deprivation of property and civil penalties for being unwilling to violate the law).

Ordinance would thus have deprived the Javinsky-Wenzeks of property, even if they had waited for and prevailed in an appeal.[8]

The Court finds that the Javinsky-Wenzeks are likely to prove that the City must provide a hearing before requiring a landlord to terminate a tenant's lease, or at the very least promptly after the City makes a lease termination decision. The Court declines to opine at this stage regarding what this hearing must entail, beyond stating that the hearings provided appear to be inadequate.

### (4)   Neutrality

Mandatory hearings do not satisfy the due process clause if they lack "requisite neutrality." *See James Daniel Good Real Prop.*, 510 U.S. at 55. "Fair procedures are not confined to the innocent." *Id.* at 62. There are significant questions regarding whether any appeals offered by the City would have been formulaic and one-sided, because the City did not initially communicate any appeal options to the Javinsky-Wenzeks and later stated that it grants no exceptions to its Ordinance.

Because of the apparent inadequacy of the hearings provided, if any, the Javinsky-Wenzeks are likely to establish a high risk that they would be erroneously deprived of

---

[8] In contrast, in *Gilbert v. Homar*, 520 U.S. 924, 932 (1997), the Supreme Court held that a police officer suspended after being arrested on drug charges was not entitled to a pre-deprivation hearing because his loss could be restored through a post-deprivation hearing. Likewise, in *Mathews v. Eldridge*, the Supreme Court held that a pre-deprivation hearing for disability benefit terminations was not required "[s]ince a recipient whose benefits are terminated is awarded full retroactive relief if he ultimately prevails. . . ." *Mathews*, 424 U.S. at 340.

property under the City's current scheme.   This factor weighs heavily in favor of providing different procedures.

### c.   Government's Interest

The third step in determining what process is due is weighing the government's interest.   *See Mathews*, 424 U.S. at 334-35.   The Court finds that providing a prompt hearing is unlikely to impose a significant burden on the City.   Indeed, the City claims that it already provides an appeal; little burden would likely be added by requiring the appeal to be earlier.   *See James Daniel Good Real Prop.*, 510 U.S. at 59 ("Requiring the Government to postpone seizure until after an adversary hearing creates no significant administrative burden [because a] claimant is already entitled to an adversary hearing . . . ."). [9]

Furthermore, the City lacks a strong interest in forcing the immediate termination of leases because tenants who violate the Ordinance are not required to leave the City altogether.   Indeed, at oral argument, the Javinsky-Wenzeks suggested that the Grants still live in the same neighborhood in St. Louis Park.   In addition, any potential for continued illegal activity at the property could likely have been forestalled "with search and arrest warrants obtained in the ordinary course."   *See id.* at 59. [10]

---

[9] The City argues that an earlier proceeding would be duplicative.   However, there is likely no requirement that the City offer the same process twice, only that it offer the process earlier.

[10] The Supreme Court has acknowledged that where "exigent circumstances" exist, the postponement of a notice and hearing may be justified.   *James Daniel Good Real Prop.*, 510

(Footnote continued on next page.)

After weighing the three factors relevant to a procedural due process inquiry, the Court finds that the Javinsky-Wenzeks have sufficiently demonstrated a likelihood of success on the merits of this claim.

### 2.    Substantive Due Process

The Javinsky-Wenzeks have also raised a substantive due process claim.   To establish a substantive due process violation, the Javinsky-Wenzeks must demonstrate (1) they were deprived of a protected property interest and (2) the state chose an irrational means to deprive them of that interest.  *BHGDN, LLC v. Minnesota*, 598 F. Supp. 2d 995, 1002 (D. Minn. 2009).   Plaintiffs must show "more than that the government decision was arbitrary, capricious, or in violation of state law."  *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992).   Instead, the evidence must demonstrate "truly irrational" governmental actions.   *Id.* (citing *Lemke v. Cass County, Neb.*, 846 F.2d 469, 472 (8th Cir. 1987)).   An example of such irrationality might be "attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet."   *Id.*   A substantive due process claim may also exist where the government's actions "either shock the conscience" or "offend judicial notions

_____
(Footnote continued.)

U.S. at 62; *see also Prop. Owner's Ass'n v. City of Omaha*, 2002 WL 1446771, at *4 (D. Neb. 2002) (holding that a property owner could not establish probable success on the merits of his due process claim because the habitability problems at his property created an emergency situation that allowed the placarding of his property).   There is no evidence before the Court that emergency circumstances existed in this case.

of fairness or human dignity." *Riley v. St. Louis,* 153 F.3d 627, 630-31 (8th Cir. 1998) (internal quotation marks and citation omitted).[11]

The application of the Ordinance in this case does not appear sufficiently irrational or outrageous to violate substantive due process. The City's Police Department stated that it found marijuana inside the Grants' home. Although the Javinsky-Wenzeks argue that the City would hold them responsible if a passerby dropped drugs onto the Grants' doorstep, the City claims that it would not apply the Ordinance in this situation. Instead, the City claims that it only holds landlord and tenants responsible for the actions of the tenant or people over whom the tenant has control, such as guests invited into a tenant's home.[12] Because the Supreme Court has held that tenants may be held responsible for the actions of their guests, the City is likely to establish a rational basis for the Ordinance's application to the Javinsky-Wenzeks. *See HUD v. Rucker,* 535 U.S. 125, 134 (2002) (holding that it did not violate due process for HUD to require the eviction of public housing tenants because of criminal activities conducted by guests in their homes). Accordingly, the Court finds that the second factor relevant to a preliminary injunction –

---

[11] In analyzing the constitutionality of the Ordinance, the Court will focus only on its application to this case. See *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-329 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact." (internal citations omitted)).

[12] The Court will assume for the purposes of this motion that someone over whom the Grants had control placed the marijuana in their home. The Javinsky-Wenzeks have not argued an alternative set of facts.

likelihood of success on the merits – weighs in favor of the Javinsky-Wenzeks on their procedural due process claim, but not on their substantive due process claim.

### C.      Balance Between Parties

The third consideration for a preliminary injunction is the balance of harms between the parties. *Dataphase Sys., Inc.*, 640 F.2d at 112-13. This balance tips in favor of the Javinsky-Wenzeks, particularly because tenants who violate the Ordinance are not required to move out of the City. *See* Part(II)(B)(1)(c), *supra*.

### D.      Public Interest

The fourth consideration for a preliminary injunction is the public interest. *Id.* This factor also weighs in favor of granting the injunction. "It is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon,* 545 F.3d 685, 690 (8th Cir. 2008). Furthermore, the defendant has presented no evidence of specific safety accomplishments obtained through the Ordinance.

Although the Court finds that the public interest, the balance of harm, and the likelihood of success on the merits all weigh in favor of granting the Javinsky-Wenzeks' request for a preliminary injunction, the Court finds no irreparable injury. The request for injunctive relief will be denied.

## III.    ST. LOUIS PARK POLICE DEPARTMENT

The parties agree that Defendant St. Louis Park Police Department should be dismissed from this action. The Court agrees.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiffs' motion for a Preliminary Injunction [*see* Docket No. 2] is **DENIED.**

2.    Defendant St. Louis Park Police Department is **DISMISSED** from this action.

DATED:   November 2, 2011                        _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                                  United States District Judge